IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RONALD HALLER,

      Petitioner,

 v.                                                       Case No. 2:14-cv-373

WARDEN, LONDON CORRECTIONAL          JUDGE MICHAEL H. WATSON
    INSTITUTION,                                    Magistrate Judge Kemp

    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Ronald Haller, an inmate at London Correctional Institution ("LoCI"),

filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is

before the Court on the petition (Doc. 2), the respondent's return of writ (Doc. 15), the

petitioner's traverse (Doc. 19), the amended petition (Doc. 20), and the respondent's

supplemental return of writ (Doc. 22). Petitioner has not filed a supplemental traverse

and the time for doing so has expired. Thus, the petition is ripe for decision. For the

foregoing reasons, it will be recommended that the petition be denied.

### I.  Background and Procedural History

The facts of the case are summarized by the Allen County, Ohio, Court of

Appeals:

> This matter stems from a series of burglaries that occurred at five separate
> residences in Allen County between November 2008 and May 2010. Each
> burglary was committed by an individual named Benny Woolwine
> ("Woolwine"). The first burglary occurred on November 5, 2008 at a
> residence on Ottawa Road ("Ottawa Burglary"). The second burglary
> occurred on August 26, 2009 at a residence on Highland Lakes Drive

> ("Highland Burglary"). The first two burglaries were committed when the
> residents were away and resulted in the theft of guns and other items
> from the residences. The third burglary occurred on December 14, 2009 at
> a residence on Amherst Road ("Amherst Burglary"). The fourth burglary
> occurred on May 5, 2010 at a residence on Gomer Road ("Gomer
> Burglary"). The fifth burglary occurred on May 19, 2010 at a residence on
> Kissing Hollow Drive ("Kissing Hollow Burglary"). The last three
> burglaries were committed when someone other than an accomplice was
> present in the residence. On each occasion, Woolwine held an individual
> at gunpoint, bound the individual's hands and feet, and proceeded to steal
> various items from the residence. In July 2010, law enforcement arrested
> Woolwine in connection with the foregoing burglaries. Eventually,
> Woolwine confessed that he committed the burglaries and that Haller had
> aided and/or abetted him in each of the burglaries.

State of Ohio v. Haller, 982 N.E.2d 111, 114 (Allen Co. App. 2012).  The factual

narratives set out by the state court are presumed to be correct.  28 U.S.C. §2254(e)(1).

On October 14, 2010, Mr. Haller was indicted by the Allen County grand jury on a

fifteen-count indictment and charged with: three counts of complicity to commit

aggravated burglary,  each with firearm specifications; three counts of complicity to

commit abduction, each with firearm specifications; one count of kidnaping with a firearm

specification; two counts of complicity to commit burglary; two counts of complicity to

commit grand theft auto; and one count of receiving stolen property.  (Doc. 16, Ex. 1).  The

case was tried before a jury.  After the State rested its case, the court dismissed the

kidnaping count.  The jury found Mr. Haller guilty on the remaining fourteen charges.

Trial Transcript (hereinafter "Transcript at ___.") at 642, 644; Doc. 16, Ex. 3-4.  Mr. Haller

was sentenced to an aggregate term of thirty-one years in prison.  Doc. 16, Ex. 5.

Mr. Haller, through counsel, filed a timely appeal of the convictions and sentence to the Third District Court of Appeals (Ex. 6) setting forth the following assignments of error:

Assignment of Error No. I

The trial court erred by entering a judgment of conviction as to counts XI and XII (burglary) as felonies of the second degree, and sentencing accordingly, as the verdict forms were sufficient as to each only for the lesser offenses of burglary, felonies of the fourth degree.

Assignment of Error No. II

Mr. Haller was deprived of his constitutional rights to trial by jury, notice, due process, and proof beyond a reasonable doubt when the trial court refused to merge counts XI, XII, and XV together and counts XIII and XIV together as allied offenses of similar import.

Assignment of Error No. III

The trial court erred by not declaring R.C. §2941.25 unconstitutional and void for vagueness, as a result of which the trial court should have merged all allied offenses.

Assignment of Error No. IV

The trial court erred by imposing multiple sentences for the same act, in violation of R.C. §2941.25 and of the double jeopardy clauses of the United States Constitution and the Ohio Constitution.

Assignment of Error No. V

The trial court erred in instructing the jury on complicity.

Assignment of Error No. VI

Mr. Haller was denied the effective assistance of counsel in that counsel failed to object to misleading and incomplete jury instructions as to complicity.

<u>Assignment of Error No. VII</u>

The convictions were against the manifest weight of the evidence.

Doc. 16, Ex. 7. The trial court's judgment was affirmed in part and reversed in part. <u>Id</u>., Ex. 11; <u>State v. Haller</u>, 982 N.E.2d 111 (Allen Co. App. 2012). The court of appeals held that the verdict forms for complicity to commit burglary were not sufficient to convict for second degree felonies but should have resulted in a conviction for fourth degree felonies. The court also held that the conviction for complicity to commit grand theft auto was allied with the conviction for receiving stolen property, so the case was remanded to the common pleas court for resentencing on those counts. <u>Id</u>. On remand, Mr. Haller was again sentenced to 31 years in prison. <u>Id</u>., Ex. 19.

On November 15, 2012, Mr. Haller filed a motion for the court of appeals to reconsider its decision, arguing that two of the convictions for complicity to commit aggravated burglary and the conviction for complicity to commit abduction, as well as the accompanying firearm specifications for each of those convictions, were against the manifest weight of the evidence. <u>Id</u>., Ex. 12. He also filed a motion to certify a conflict between the decision in his case and the decisions in a number of other Ohio appellate courts. <u>Id</u>., Ex. 14. On December 11, 2012, the court of appeals denied both of those motions. <u>Id</u>, Ex. 15.

Mr. Haller, through counsel, filed an appeal to the Supreme Court of Ohio, raising the following propositions of law:

I.      The convictions for Counts VIII, IX, and X were against the manifest

4

weight of the evidence [in relation to same convictions referenced in the appellate court brief].

II.     The trial court erred in instructing the jury on complicity.

III.    Mr. Haller was denied the effective assistance of counsel in that counsel failed to object to misleading and incomplete  jury instructions as to complicity.

IV.     The trial court erred by imposing multiple sentences for the same act, in violation of R.C. §2941.25 and of the Double Jeopardy Clauses of the United States Constitution and the Ohio Constitution.

V.      Mr. Haller was deprived of his constitutional rights to trial by jury, notice, due process, and proof beyond a reasonable doubt when the trial court refused to merge Counts XI, XII, and XV together and Counts XII and XIV together as allied offenses of similar import.

VI.     The trial court erred by not declaring R.C. §2941.25 unconstitutional and void for vagueness, as a result of which the trial court should have merged all allied offenses.

Doc. 16, Ex. 17.  The Ohio Supreme Court declined to hear his appeal and dismissed the case on March 27, 2013.  Id., Ex. 18.

On January 9, 2014, Mr. Haller filed, in the state trial court, a pro se motion for leave to file a motion for a new trial based on newly discovered evidence.  Doc. 16, Ex. 20.  The new information consisted of an unsigned affidavit from Tammy Jones, who had testified at the trial.  She claimed that she was never asked at trial whether Mr. Haller was involved in the burglaries, and that if she had been asked her answer would have been that he was not.  Id., Ex. A.  On August 19, 2014, the trial court overruled Mr. Haller's motion for leave to file a new trial motion.  Doc. 16, Ex. 28.  The court held that the newly discovered evidence did not fulfil the requirements to grant a new trial, and that Mr. Haller had "failed

to establish a reason why he was unavoidably prevented from acquiring" the new information in a timely manner. Id. at p. 2-3.  Mr. Haller filed a pro se appeal of the denial of this motion to the Third District Court of Appeals (Doc. 16, Ex. 23) followed by a "motion to fore go [sic] filing merit brief" (Id., Ex. 24).  The court of appeals dismissed that appeal on April 24, 2014.  Id., Ex. 25.

On February 18, 2014, Mr. Haller filed a second pro se motion for leave to file a delayed motion for a new trial.  Doc. 16, Ex. 26.  This motion was based on an affidavit from a fellow prisoner who stated that Mr. Haller's co-defendant, Benny Woolwine, had confessed to him that he had falsely implicated Mr. Haller in the crimes.  Id., Ex. A.  On August 19, 2014, the trial court denied that motion as well.  Doc. 16, Ex. 28.  Mr. Haller moved for the court to reconsider (Id., Ex. 29), but it appears that before the court ruled on the motion to reconsider he appealed the decision (Id., Ex. 30).  The Court of Appeals dismissed the case for lack of jurisdiction because the date of the judgment entry of conviction was incorrect and the appeal was not timely filed. Id., Ex. 31.  Mr. Haller filed a motion for reconsideration, which was denied.  Id., Ex. 32-33.

Mr. Haller filed a third pro se motion for a new trial on December 1, 2014, based on the purported newly discovered evidence referenced in his second motion for leave to file a motion for a new trial.  Doc. 16, Ex. 34.  On December 29, 2014, the trial court denied the motion.  Id., Ex. 37.  Mr. Haller appealed the decision, arguing that the trial court abused its discretion in denying his new trial motion.  Id., Ex. 38-39.  The Court of Appeals affirmed the judgment of the trial court, reasoning that the appeal was barred by res

judicata, and because the proffered testimony, even if admissible, was impeaching rather than exculpatory, and due to the other evidence available to the jury, there was no strong probability of a different outcome. Id., Ex. 42.

On July 1, 2015, Mr. Haller filed a pro se appeal of that judgment to the Ohio Supreme Court, raising the following propositions of law:

I.    Where the trial court deprive [sic] the accused the right to secure testimony in his favor, the accused [sic] right to compulsory process is violated.

II.   A claim of actual innocence require [sic] the reviewing court to determine whether in light of the new evidence, it is more likely than not that, if granted a new trial, no reasonable juror would vote to convict.

Doc. 16, Ex. 44. The Supreme Court declined to accept jurisdiction of the appeal. State of Ohio v. Haller, Case No. 2015-1098 (S.Ct. of Ohio Sept. 30, 2015).

Mr. Haller filed a pro se petition for habeas corpus relief with this Court on April 25, 2014, the grounds of which will be discussed below. (Doc. 2). Although the case was initially transferred to the United States District Court for the Northern District of Ohio in Toledo because the conviction occurred in the Northern District, that order was later vacated. (Doc. 7-8) . Respondent filed a return of writ on September 16, 2015 and Mr. Haller filed his traverse on February 11, 2016. (Doc. 16, 19). He then moved to amend his habeas petition to include an additional ground for relief, and he was granted leave to do so. (Doc. 21). Respondent filed a timely supplemental return of writ (Doc. 22). Mr. Haller has not filed a supplemental traverse. The petition for writ of habeas corpus is now ripe

for decision.

## II.  Legal Standard

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 ("AEDPA") govern the scope of this Court's review.  See Penry v. Johnson, 532 U.S. 782, 791 (2001); Wilson v. Parker, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24,(2002) (per curiam).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

8

In applying this statute, the Supreme Court has held that "[t]he focus... is on whether the state court's application of clearly established federal law is objectively unreasonable... an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Bobby v. Dixon, ___ U.S. ___, ___, 132 S.Ct. 26, 27 (2011), quoting Harrington v. Richter, 562 U.S. 86, 101-103 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. at 102 (quoting Jackson v. Virginia, 443 U.S. 307, 332, n. 50 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id., quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

In situations where the state courts have not adjudicated the merits of a claim, a federal habeas court should review a Petitioner's claim de novo. Howard v. Bouchard, 405 U.S. 459, 467 (6th Cir. 2005) ("Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an 'adjudication on the merits.' Thus, a federal habeas court reviews such unaddressed claims de novo."); McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003) (reviewing habeas Petitioner's sufficiency-of-the-evidence claim de novo where the state courts had

considered the admissibility of the evidence but not the sufficiency of the evidence); Pennington v. Jones, 2006 WL 322474, at *2 (E.D. Mich. Feb.10, 2006) (reviewing habeas Petitioner's claim de novo where he raised it for the first time in his petition).

Questions of state law are not reviewable in a federal habeas action. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). Petitioner instead must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a);  see also Estelle, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Accordingly, the Court of Appeals has held that "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994).

### III.  Discussion

Mr. Haller has raised the following grounds for relief in his petition:

I.    **Ground One.**  Petitioner's right to due process of law was violated by the inclusion of erroneous jury instructions.

II.   **Ground Two.**  Petitioner was deprived of the effective assistance of counsel where counsel failed to object to erroneous jury instructions, in violation of the Sixth and Fourteenth Amendments.

10

III.  **Ground Three.**  Petitioner's right to Due Process and Double Jeopardy protection from multiple punishment was violated by multiple consecutive sentences for the same conduct in several of the charges.

IV.  **Ground Four.**  Petitioner's right to due process and trial by jury was violated by the imposition of multiple consecutive sentences based upon judicial fact-finding and without notice, trial by jury or proof beyond reasonable doubt.

V.  **Ground Five.**  The Petitioner was deprived of his constitutional rights to due process of the Fourteenth Amendment and proof beyond a reasonable doubt where the complicity charge on count four, five and six was not proven beyond a reasonable doubt.

(Doc. 20).

With the exception of Ground Five, Respondent does not contest that Mr. Haller has exhausted his state remedies on these issues.  Of Mr. Haller's five grounds for relief, Respondent argues that only one warrants a review on the merits:  Ground Two, which asserts that Petitioner was denied the effective assistance of counsel because counsel failed to object to erroneous jury instructions, in violation of the Sixth and Fourteenth Amendments.  The Court will review each of the five grounds in turn.

**A. Erroneous Jury Instruction**

In support of this ground for relief, Mr. Haller states that "[t]he trial court omitted crucial verbiage from the 'Complicity' jury instruction which rendered the instructions incomprehensible and deprived the jury of the ability to properly apply the law to the evidence and thus deprived Appellant a fair trial and due process of law."  (Doc. 2, at 6).  This issue was Petitioner's fifth assignment of error on direct appeal, and in support of that

assignment of error, he posed the following questions:

A. Did the trial court [sic] grammatical error render an unintelligible instruction on the most critical part of this case?

B. Did the trial court compound that problem by also omitting the "mere association" caveat to the instruction on complicity?

C. Did the trial court further compound these problems by omitting any specific offense-tied instruction on the relevant *mens rea* for each allegedly complicit act?

D. Did the trial court also err by not instructing the jury as to the caveat that an accessory after-the-fact is not necessarily complicit?

The charges against Mr. Haller were based on his being "in complicity" with a co-defendant in committing the crimes. Complicity is defined by O.R.C. §2923.03, in pertinent part, as follows:

2923.03 Complicity

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
(1) Solicit or procure another to commit the offense;
(2) Aid or abet another in committing the offense;
(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
(4) Cause an innocent or irresponsible person to commit the offense.

The jury instruction as to complicity was as follows:

When two or more persons have a common purpose to commit a crime, and <u>one does one first</u> [sic] and a second performs another, those acting together are equally guilty of the crime. (Emphasis added).

"Aid" means to help, assist or strengthen.

"Abet" means to encourage, counsel, incite or assist.

12

> If you find beyond a reasonable doubt that Ronald L. Haller knowingly aided, helped, assisted or encouraged another in the commission of Aggravated Burglary in Count 1, he is regarded as if he was the principal offender and is just as guilty as if he personally performed every act constituting aggravated burglary.

Transcript, Vol. IV, at 976-977.  Doc. 16, Ex. 11 at ¶45.

The appellate court first noted that Mr. Haller's counsel did not object to any of the jury instructions and stated that he was "satisfied" with the instructions.  It noted that under Ohio law, "[a]bsent plain error, the failure to object to improprieties in jury instructions, as required by Crim.R.30, is a waiver of the issue on appeal."  Transcript, p. 880; Doc. 16, Ex. 11 at ¶41, quoting State v. Underwood, 3 Ohio St.3d 12,13 (1983).  To show plain error the jury instruction must have been an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights."  State v. Barnes, 94 Ohio St.3d 21,27 (2002).  Although the Court recognized that a defendant is entitled to have complete and accurate jury instructions on all charges and issues, a "single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  Doc. 16, Ex. 11 at ¶43; State v. Price, 60 Ohio St.2d 136, 141 (1979), quoting Cupp v. Naughter, 414 U.S. 141, 146-47 (1973).

In conducting its plain error review, the appellate court held that although the "one does one first" language in the instruction was not ideal, taken in the context of the totality of the instructions it did not render the instruction meaningless nor rise to the level of reversible error.  Doc. 16 at ¶46.  The court was also not persuaded by Mr. Haller's argument that there should have been a special jury instruction admonishing that "mere

13

association with one who perpetrates an unlawful act does not render a person participant in the crime so long as his acts are innocent." Acknowledging that this language is "an accurate statement of law," the court noted that Mr. Haller did not request this instruction, nor was he able to cite in his appellate brief any  authority requiring that such an admonition be expressly included in jury instructions on complicity.  The court concluded that the complicity instruction as a whole required the jury to find that the defendant engaged in some active participation in the offense before he could be found guilty of complicity.  Id. at ¶47-48.

The court of appeals also answered the last two of Mr. Haller's questions about the complicity jury instruction in the negative.  With respect to Mr. Haller's argument that the complicity instruction did not properly reflect the requirement that one must act with the kind of culpability required for the commission of an offense to be guilty of complicity, the court stated that this requirement was included in the jury instructions on Counts I through XIV.  With respect to each of those  counts, the instructions told the jury that in order to find Mr. Haller guilty of the charged offense the jury must find beyond a reasonable doubt that Mr. Haller acted with the kind of culpability required for the commission of the charged offense.  See, e.g. Transcript at 1051 ("Before you can find the defendant guilty of complicity to grand theft, you must find beyond a reasonable doubt.... the defendant, Ronald L. Haller, did with purpose to deprive the owner of the property knowingly obtain or exerted control over said property without the consent.....").  The court also rejected Mr. Haller's argument that the trial court erred in not instructing the jury that an accessory

14

after-the-fact is not necessarily complicit, relying on Ohio Supreme Court precedent holding that if the trial court properly instructs the jury on Ohio law pertaining to complicity, it is under no obligation to also give an instruction on accessories after-the-fact. State v. Carver, 30 Ohio St.2d 280, 290 (1972); see also State v. Boddie, (Allen Cty. Case No. 1-2000-72, Sept. 6, 2001).  The court of appeals concluded that the jury instruction errors alleged by Mr. Haller did not rise to the level of plain error.

To the extent that the state court considered and decided whether the jury instructions on complicity were adequate to permit the jury to make an informed decision as to whether, based on the evidence presented at trial, Mr. Haller committed the crimes with a complicity element, this is a state law question not cognizable in a federal habeas petition.  See Estelle, supra, 502 U.S. at 68.  Any federal claim associated with the jury instructions was clearly waived through the commission of a procedural default - that is, trial counsel's failure to object to the instructions.  Engle v. Isaac, 456 U.S. 107, 124–29(1982); Scott v. Mitchell, 209 F.3d 854, 867 (6th Cir. 2000).  Moreover, a plain error review by a state court does not excuse a procedural default such as the one which occurred when trial counsel failed to object to the instructions.  See Wade v. Timmerman-Cooper, 785 F.3d 1059, 1067 (6th Cir. 2015), quoting Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000) (holding that the state court's review of claims for plain error "did not constitute a waiver of the procedural default rules.").  For these reasons, it will be recommended that Mr. Haller's first ground for relief be denied.

**B.      Ineffective Assistance of Counsel Relating to Jury Instructions**

15

The court of appeals' analysis of Mr. Haller's ineffective assistance of counsel claim for relief was succinct, and can be repeated in full as follows:

> Furthermore, we find that Haller was not denied effective assistance of counsel. An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy, 63 Ohio St.3d 424, 433, 588 N.E.2d 819 (1992), superseded by constitutional amendment on other grounds as recognized by State v. Smith, 80 Ohio St.3d 89, 103, 684 N.E.2d 668 (1997).
>
> Haller maintains that his counsel was ineffective because he failed to object to the complicity instruction given by the trial court. Having found that the trial court properly instructed the jury on complicity, we find that Haller was not denied effective assistance of counsel.

The Sixth Amendment's guarantee of the right to counsel "is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, fn. 14. (1970).  To show ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficiency caused prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984).  A court need not consider the second prong of the Strickland test if the first prong is deemed not to be met.  Id. at 697.  The standards under not only Strickland, but also the AEDPA are highly deferential.  Premo v. Moore, 562 U.S. 115 (2011).  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

16

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, <u>supra</u> at 689.

Mr. Haller argues that because trial counsel stated that he was "satisfied" with the jury instructions, that this shows that this was not "reasoned judgment."  He asserts counsel's failure to object to the erroneous instruction and to request the clarifying special instructions resulted in an unfair trial.  (Doc. 2 at 7).  However, "the Sixth Amendment guarantees reasonable competence, not perfect litigation." <u>Baze v. Parker</u>, 371 F.3d 310, 320-21 (6th Cir. 2004); <u>see also</u> <u>McQueen v. Scroggy</u>, 99 F.3d 1302, 1315 (6th Cir.1996) (stating that an attorney's "merely losing, being wrong, or miscalculating is not enough to free every person convicted of a crime").  In Mr. Haller's trial, the "one did one first" language was clearly not ideal and the special instructions he now asserts should have been given were not contrary to law.  However, the appellate court (applying the <u>Strickland</u> test as adapted by the Ohio Supreme Court in <u>Bradley</u>) determined that the jury instructions as a whole adequately and fairly instructed the jury as to the charges for which Mr. Haller was on trial, and concluded for this reason that counsel's representation was not ineffective.  This court agrees that counsel's failure to object or to request the additional instructions does not rise to the level of deficient performance required to satisfy the first prong of <u>Strickland</u> or the deferential standard in the AEDPA.  Given the court of appeals' discussion of the jury instruction issue, even if counsel had raised the issue at trial, the appeal would have come out the same way.  This also indicates the absence of prejudice,

and the state court's determination that there was no prejudice is not an unreasonable application of <u>Strickland</u>. Thus, it will be recommended that Mr. Haller's second ground for relief be denied.

### III.  Multiple Consecutive Sentences - Double Jeopardy

In his third ground for relief, Mr. Haller argues that the <u>Blockburger</u> test (<u>see</u> <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932)) required merging of Counts 11 and 12, with the merged sentences for Counts 13 and 14 as well as the sentence for Count 15. He contends that "the same conduct with a single animus was alleged, even by the state for all of these counts.  Burglary and [t]heft were committed at the same time therefore same offense."  (Doc. 2 at 9).

The <u>Blockburger</u> test refers to the Supreme Court's holding that the Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes unless each statute "requires proof of a fact which the other does not."  <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932).  The Supreme Court further clarified that the Double Jeopardy Clause prohibits prosecution of a defendant for a greater offense when he or she has already been acquitted or convicted on the lesser included offense.  <u>Brown v. Ohio</u>, 432 U.S. 161 (1977).  In <u>Brown</u>, the defendant stole a car and was apprehended several days later and charged with "joyriding"- taking or operating the car without the owner's  consent. Defendant pled guilty and was sentenced to thirty days in jail and a one-hundred-dollar fine. After his release from jail the defendant was indicted on two counts, charging him with the original

18

theft of the car and joyriding on the same date of the theft. The defendant objected to the counts on double jeopardy grounds. Id. at 162-163. The Brown court held that the defendant could not be convicted of either of the charges since they were the same offense under the Double Jeopardy Clause as the one he had pled guilty to. The court noted that "[t]he Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." Id. at 169.

However, "[w]here two offenses are the same for Blockburger purposes, multiple punishments can be imposed if the legislature clearly intended to do so." Bates v. Crutchfield, 2016 WL 7188569, at *5 (S.D. Ohio Dec. 12, 2016)(citing Albernaz v. United States, 450 U.S. 333, 344 (1981); Missouri v. Hunter, 459 U.S. 359, 366 (1983); Ohio v. Johnson, 467 U.S. 493, 499 (1984); Garrett v. United States, 471 U.S. 773, 779 (1985); White v. Howes, 586 F.3d 1025, 1035 (6th Cir. 2009)). Thus, "[e]ven if the crimes are the same under Blockburger, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." Volpe v. Trim, 708 F.3d 688, 697 (6th Cir. 2013)(citing Johnson, 467 U.S. at 499 n. 8; Hunter, 459 U.S. at 368–69). Moreover, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." Id. (citing Banner v. Davis, 886 F.2d 777, 780 (6th Cir. 1989)).

> An Ohio court of appeals decision of a double jeopardy claim
> which is limited to the application of Ohio Rev. Code § 2941.25
> is entirely dispositive of the federal double jeopardy claim.

> Jackson v. Smith, 745 F.3d 206 (6th Cir. 2014), citing State v. Rance, 85 Ohio St. 3d 632 (1999), overruled by State v. Johnson, 128 Ohio St. 3d 153 (2010). "What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" Jackson v. Smith, 745 F.3d 206 (6th Cir. 2014), quoting Missouri v. Hunter, 459 U.S. 359, 366 (1983).

Bates v. Crutchfield, 2016 WL 7188569, at *5.

Counts 11 and 12,of the Indictment charged Petitioner in the aiding and abetting of the November 5, 2008, burglary and grand theft of a residence on Ottawa Road.  Counts 13 and 14 charged him in the aiding and abetting of the August 26, 2009, burglary and grand theft of a residence on Highland Lakes Drive.  Thus, the charges in Counts 11 and 12 and 13 and 14 plainly involve conduct that occurred on different dates and in different locations, and his convictions and sentences on these charges do not violate the Double Jeopardy Clause on this basis.

Additionally, the state appellate court sustained Petitioner's claim that Count 15, which involved his conviction on receiving stolen property, should be merged with his conviction on Count 12, and remanded the case for re-sentencing on those charges:

> As for Count XV, receiving stolen property, we find, and the State concedes, that Count XV merges with Count XII, grand theft. First, we find that it is possible to commit theft and receiving stolen property with the same conduct. Second, upon review of the record, it appears that Counts XII and XV both relate to Woolwine's act of stealing guns from the Ottawa Road residence. Given the foregoing, we find that Counts XII and XV

20

are allied offenses.

State v. Haller, 982 N.E. 2d at 131.  Therefore, Petitioner's claim that his sentence on Count

15 should have been merged with his sentences on Counts 11 and 12 is now moot and does

not provide a basis for habeas corpus relief.

The state appellate court rejected Petitioner's argument that his convictions on

aiding and abetting in the commission of burglary and grand theft related to the Ottawa

Road and Highland Lake residences, respectively, should also be merged at sentencing,

finding that  these crimes involved separate criminal acts:

> Haller contends that the trial court erred when it did not merge
> Counts XI, XII, and XV together and Counts XIII and XIV
> together, because the offenses are allied offenses of similar
> import. . . .
>
> Ohio's statute concerning multiple counts, R.C. 2941.25, provides as
> follows:
>
> (A) Where the same conduct by defendant can be construed to
> constitute two or more allied offenses of similar import, the
> indictment or information may contain counts for all such
> offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more
> offenses of dissimilar import, or where his conduct results in
> two or more offenses of the same or similar kind committed
> separately or with a separate animus as to each, the indictment
> or information may contain counts for all such offenses, and
> the defendant may be convicted of all of them.
>
> In State v. Johnson, 128 Ohio St.3d 153, 2010-Ohio-6314, 942
> N.E.2d 1061, the Ohio Supreme Court clarified the application
> of R.C. 2941.25. Specifically, *129 the court overruled State v.
> Rance, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), "to the extent
> that it calls for a comparison of statutory elements solely in the

abstract under R.C. 2941.25. [Now w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." Johnson at ¶ 44.

Johnson describes the test for determining whether offenses are allied as follows:

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the [first] question is whether it is possible to commit one offense and commit the other offense with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act committed with a single state of mind.'

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged. (Emphasis sic; Citations omitted.) Johnson at ¶ 48–50.

Counts XI, XII, and XV (Ottawa Burglary)

Haller contends that Counts XI, XII, and XV (complicity to burglary, complicity to grand theft, and receiving stolen property, respectively) are allied offenses of similar import. . . .

***

Haller [] cites several cases in which other courts of appeal, applying Johnson, have determined that burglary and theft are allied offenses of similar import. State v. Blackburn, 4th Dist. No. 10CA46, 2011-Ohio-4624, 2011 WL 4067779 (finding counts of burglary, theft, and receiving stolen property were allied offenses because they were committed with single act); State v.

James, 5th Dist. No. 11 CAA 05 0045, 2012-Ohio-966, 2012 WL 762167 (finding counts of burglary and theft were allied offenses because they were committed through the same course of conduct and single state of mind). Having considered the holdings in the cases cited by Haller, we find the cases to be distinguishable from the instant case.

Without addressing the first step under Johnson, we find, under the facts of this case, that the burglary and grand theft offenses associated with Counts XI and XII, respectively, were committed by two separate acts. Woolwine testified that after the residents left the Ottawa Road residence he broke in and proceeded to ransack the residence taking guns, archery equipment, knives, an Xbox, and several video games and movies. According to Woolwine's testimony, the burglary was complete upon entering the residence. At this time, none of Woolwine's actions satisfied any of the elements of grand theft. It was not until Woolwine exerted control over Lhamon's guns, an act which undoubtedly occurred apart from the unlawful entry into the residence, that Woolwine committed grand theft. See State v. Crosby, 12th Dist. Nos. CA2010–10–081, CA2011–02–013, 2011-Ohio-4907, 2011 WL 4436641 (finding counts of burglary and grand theft were not allied offenses because defendant committed burglary with a different act and a separate animus from grand theft); see also State v. Sludder, 3d Dist. No. 1–11–69, 2012-Ohio-4014, 2012 WL 3801319, ¶ 14 (Breaking and entering and burglary are not allied offenses), citing State v. Brewer, 3d Dist. No. 16–11–13, 2012-Ohio-3899, 2012 WL 3679552, ¶ 45 (same). Given the foregoing, we find that Counts XI and XII were not committed with the same conduct, *i.e.*, a single act, and therefore are not allied offenses.

\***

Counts XIII and XIV (Highland Burglary)

Haller contends that Counts XIII and XIV (complicity to commit burglary, complicity to commit grand theft) are allied offenses of similar import. We disagree.

Again, without addressing the first step under *Johnson,* we

23

find, under the facts of this case, that the burglary and grand theft offenses associated with Counts XIII and XIV, respectively, were committed by two separate acts, and therefore are not allied offenses.

Accordingly, we find that the trial court did not err when it determined that Counts XIII and XIV were not allied offenses.

State v. Haller, 982 N.E. 2d at 128-131 (footnotes omitted).

The record supports the state appellate court's determination that the charges of grand theft and burglary referred to separate criminal acts.  Petitioner's convictions on aiding and abetting Counts 12 and 14 related to stolen firearms under O.R.C. § 2913.02(A)(1) and (B)(4), which provides:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

***

(B)(1) Whoever violates this section is guilty of theft.

***

(4) If the property stolen is a firearm or dangerous ordnance, a violation of this section is grand theft. Except as otherwise provided in this division, grand theft when the property stolen is a firearm or dangerous ordnance is a felony of the third degree, and there is a presumption in favor of the court imposing a prison term for the offense. If the firearm or dangerous ordnance was stolen from a federally licensed firearms dealer, grand theft when the property stolen is a firearm or dangerous ordnance is a felony of the first degree. The offender shall serve a prison term imposed for grand theft

24

> when the property stolen is a firearm or dangerous ordnance
> consecutively to any other prison term or mandatory prison
> term previously or subsequently imposed upon the offender.

Thus, the state appellate court did not unreasonably conclude that the grand theft did not

occur until the taking of the firearms, which involved a separate criminal act and animus

from each of the underlying burglary charges.

Further, the state appellate court reduced Petitioner's convictions related to the

burglary charges in Counts 11 and 13 from second degree felony charges under O.R.C. §

2911.12(A)(2), to fourth degree felony charges under O.R.C. § 2911.12(A)(4), based on

insufficient verdict forms.  State v. Haller, 982 N.E.2d at 127-128.  O.R.C. § 2911.12(A)(4)

provides:

> (A) No person, by force, stealth, or deception, shall do any of
> the following:
>
> * * *
>
> (4) Trespass in a permanent or temporary habitation of any
> person when any person other than an accomplice of the
> offender is present or likely to be present.

Id.

Therefore, Petitioner's convictions on the charges relating to burglary and grand

theft of firearms in Counts 11, 12 and 13 and 14, do not violate the Blockburger test.

For all of the foregoing reasons, Petitioner has failed to establish that the state

appellate court unreasonably applied or contravened federal law, or that its decision

constituted an unreasonable determination of the facts in light of the evidence presented,

28 U.S.C. § 2254(d), so as to warrant relief.

Claim three is without merit.

### IV.   Multiple Consecutive Sentences - Judicial Fact-finding

As his fourth ground for relief, Mr. Haller argues that the trial court "imposed multiple consecutive sentences based upon judicial fact finding, absent notice, trial by jury or proof beyond a reasonable doubt of any of the facts found to determine the imposition of such sentences.  (Doc. 2 at 10).  The appellate court resolved this claim as follows:

> Finally, Haller contends that the current process by which offenses are determined to be allied violates his right to notice, his right to a trial, and the requirement that he be proven guilty beyond a reasonable doubt.
>
> Specifically, Haller contends that the State should be required to provide the defendant notice in cases where it intends to argue against the existence of allied offenses; that the fact finder should determine whether the offenses at issue were committed with the same conduct and animus; and, that the state must prove beyond a reasonable doubt that the offenses alleged to be allied were not committed with the same conduct and animus. As a result of Haller's contention, he requests that we remand this matter for a new trial and require the State "to prove separate animus to a new jury." Appellant's Br., p. 15. We disagree.
>
> Initially, we note that Haller cites no authority in support of his contention. Notwithstanding a lack of supportive authority, we are not persuaded by Haller's argument. The law is clear; the trial court, not the fact finder, determines whether offenses are allied as this is a question of law, not an issue of fact. Contrary to Haller's assertion, we fail to see how this process prejudicially affects, as he phrases it, his right to notice, his right to a trial, and the requirement that he be proven guilty beyond a reasonable doubt. As a result, we find Haller's contention to be without merit.

Haller, 982 N.E.2d at 131.

Respondent argues that this ground for relief is not cognizable in federal habeas,

because the United States Supreme Court has determined that the protocol in most states to entrust trial judges with discretion to impose consecutive or concurrent sentencing is not unconstitutional. Oregon v. Ice, 555 U.S. 160, 168 (2009)(declining to apply the rule of Apprendi v. New Jersey, 542 U.S. 296 (2000) to the issue of consecutive sentences, concluding that "[t]he decision to impose sentences consecutively is not within the jury function that 'extends down centuries into the common law.' [citation omitted] Instead, specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures"). Because there is no federal constitutional violation here, it will be recommended that the fourth ground for relief be denied.

## V. Sufficiency of the Evidence

Mr. Haller's last ground for relief challenges the sufficiency of the evidence presented in support of his convictions. A challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet an exacting standard. As this Court explained in Lynch v. Hudson, 2011 WL 4537890, *81–82 (S.D .Ohio Sept. 28, 2011):

> In Jackson v. Virginia [443 U.S. 307 (1979) ], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324.

It is important that when reviewing a sufficiency of the evidence challenge the Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." Brown v. Konteh, 567 F.3d 191, 205 (6th Cir.2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. Cf. Matthews v. Abramajtys, 319 F.3d 780, 788–89 (6th Cir.2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

Further, as the Court of Appeals has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of the Jackson v. Virginia] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." Saxton v. Sheets, 547 F.3d 597, 602 (6th Cir.2008). In Tucker v. Palmer, 541 F.3d 652 (6th Cir.2008), the Court of Appeals explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

Id. at 656.  See also Parker v. Renico, 506 F.3d 444, 448 (6th Cir.2007); Nash v. Eberlin, 258

F. App'x 761, 765 (6th Cir. 2007). This Court recognizes, however, that in spite of the AEDPA, "it must distinguish reasonable speculation from sufficient evidence when reviewing a state court's application of <u>Jackson</u>." <u>Arthurs v. Warden, Warren Correctional Institution</u>, 2012 WL 995395, *9 (S.D. Ohio March 23, 2012) (internal quotations omitted).

Mr. Haller's fifth ground for relief challenges one of the convictions, known as the "Gomer Road Burglary" which was charged in counts 4-6 of the indictment. The facts of the Gomer Road Burglary, as detailed by the state court of appeals, are as follows:

> {¶ 27} Like the Amherst Burglary, Woolwine testified that he committed the Gomer Burglary because he owed Haller money. Unlike the Amherst Burglary, Woolwine learned of the Gomer Road residence when he overheard "some guys talking about it at work." Trial Tr., p. 170. Woolwine testified that Haller knew he was going to burglarize the Gomer Road residence and that Haller had arranged to pick him up after the burglary. Woolwine testified that he committed the burglary at approximately 11:00 a.m. Woolwine testified that after he completed the burglary he stole the resident's vehicle and called Haller. Woolwine testified that he drove to a secluded location on a gravel road running parallel to railroad tracks. Woolwine testified that Haller had identified the location prior to the burglary. Woolwine testified that Haller backed his silver Chevrolet Suburban ("Suburban") down the gravel road to where he was waiting and exchanged the stolen items.

> {¶ 28} Sherri Norris ("Norris") testified that she lived and was present at the Gomer Road residence when it was burglarized on May 5, 2010. Norris testified that at approximately 10:45 a.m. she was preparing to leave her residence when she was approached by a masked man wielding a gun. Norris testified that the man proceeded to bind her hands and feet and ransack her residence. Norris testified that at approximately 11:20 a.m., after the man had left, she freed herself and sought help. Norris testified that the man stole her vehicle, a dark blue Ford Explorer ("Explorer").

> {¶ 29} Chad Roberts ("Roberts"), a railroad employee, testified that on May 5, 2010, he was working in the area where Woolwine testified to meeting Haller following the Gomer Burglary. Roberts testified that between 11:30

29

a.m. and 12:00 p.m. he witnessed what appeared to be a dark blue or black Explorer driving quickly down the gravel road. Roberts testified that shortly after seeing the Explorer he witnessed a large silver SUV backing down the gravel road. At trial, Roberts identified State's exhibit 31, a color picture of Haller's Suburban, as the SUV he saw *121 backing down the gravel road on May 5, 2010.

{¶ 30} Detective Baker testified that phone records introduced into evidence revealed that Woolwine and Haller exchanged a series of calls on the day of the Gomer Burglary. Specifically, Detective Baker testified that the phone records revealed that Woolwine and Haller exchanged calls at 8:01 a.m., 9:41 a.m., 11:16 a.m., and 11:35 a.m. on May 5, 2010.

{¶ 31} Haller testified that he did not know anyone who resided at the Gomer Road residence. Haller also testified that he never asked Woolwine to burglarize the Gomer Road residence, nor was he aware that Woolwine had committed the burglary until Woolwine's arrest.

Haller, supra, 982 N.E.2d at 120-121.

A review of the facts demonstrates that Mr. Haller's conviction on the counts related to the Gomer Road Burglary relied heavily on the jury's weighing of the testimony of Mr. Woolwine and Chad Roberts, as corroborated by the phone record evidence. As discussed above, it is not this Court's role in a habeas review to re-evaluate credibility determinations made by the fact-finder. See, Brown, supra. Also as discussed above, the state court's interpretation of the state law of complicity is not an issue for this Court to decide. The state court's determination that the evidence was sufficient to support the convictions is not unreasonable, and that conclusion precludes this Court from granting relief. There is thus no need to address Respondent's alternative argument that this claim was procedurally defaulted.

## IV. Conclusion

For the foregoing reasons, it is recommended that the petition for a writ of habeas corpus be denied and that this case be dismissed.

## V.  Procedure on Objections

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge